85 N.Y.2d 125 (1995)
647 N.E.2d 1273
623 N.Y.S.2d 765
In the Matter of Pace University et al., Appellants,
v.
New York City Commission on Human Rights et al., Respondents.
Court of Appeals of the State of New York.
Argued January 12, 1995
Decided February 14, 1995.
Kramer, Levin, Naftalis, Nessen, Kamin & Frankel, New York City (Marvin E. Frankel, Kevin B. Leblang and Robert I. Ruback of counsel), for appellants.
Paul A. Crotty, Corporation Counsel of New York City (Helen P. Brown, Larry A. Sonnenshein, David Bruce Goldin and John R. Low-Beer of counsel), for New York City Commission on Human Rights, respondent.
Chief Judge KAYE and Judges SIMONS, TITONE, SMITH and CIPARICK concur; Judge BELLACOSA taking no part.
*127 LEVINE, J.
Respondent Mittleman was hired by Pace University in 1981 as a full-time assistant professor, with the understanding that she would remain in that position for seven years and would be considered for tenure in her sixth year. In 1986, she was denied tenure by Pace on the grounds that she lacked a Ph.D. and a sufficient record of scholarly research or publications. At that time, she was offered a position of adjunct lecturer to teach half time at half her full-time yearly salary on a year-to-year basis. The offer specifically disclaimed any intent to award tenure and stated that all adjunct appointments are "subject to the needs of the institution and a capacity of the faculty member to continue to carry the work assignment satisfactorily."
On January 29, 1987, Mittleman filed a complaint with the New York City Commission on Human Rights alleging that she had been denied tenure on the basis of her sex in violation of Administrative Code of the City of New York § 8-107 (1) (a). She subsequently concluded her seven years of full-time teaching through the fall 1987 semester. In the spring semester of 1988, she began teaching as a half-time adjunct lecturer pursuant to Pace's prior offer. However, she refused to execute a January 1988 contract (Pace's standard adjunct faculty appointment agreement) for that semester. She was further permitted to teach in adjunct status during the fall 1988 and spring 1989 semesters, although she did not execute contracts for those semesters, despite Pace's standard policy of not allowing persons to teach without signed contracts.
*128 During this period, Mittleman and Pace engaged in sporadic settlement negotiations, culminating in a February 1989 offer by Pace of a five-year adjunct contract with a 60% increase over her previous salary, in exchange for withdrawal of her discrimination complaint. When this offer was rejected by Mittleman, Pace wrote to her in a June 2, 1989 letter which referred to the pending litigation and stated that due to the "failure to reach agreement on the adjunct faculty appointment offered since January 1988", she would not be offered an adjunct faculty appointment for the 1989-1990 year.
On July 11, 1989, Mittleman filed a second complaint with the Commission alleging that petitioners had retaliated against her for filing, or not withdrawing, her original complaint in violation of Administrative Code § 8-107 (7). After a hearing, the Commission dismissed the sex discrimination claim, finding that Pace's denial of Mittleman's tenure application was based solely on legitimate, academic considerations, but concluded that Pace had unlawfully retaliated against her by withdrawing her adjunct status for the 1989-1990 year.
We conclude that there does not exist on this record substantial evidence to support the Commission's finding of retaliation on the part of petitioners (see generally, 300 Gramatan Ave. Assocs. v State Div. of Human Rights, 45 N.Y.2d 176, 179-182). Moreover, the Commission's determination was affected by an error of law. It rested largely on a finding that the nonrenewal of Mittleman's adjunct status upon the breakdown of the settlement negotiations was not due to either of the two nonrenewal grounds stated in Pace's original offer of adjunct employment  i.e., the needs of the institution and the capacity of the faculty member to satisfactorily perform her duties. In effect, the Commission determined that any other ground for nonrenewal would constitute retaliation as a matter of law. This was erroneous.
A prima facie case of retaliation requires evidence of a subjective retaliatory motive for the termination (see, Matter of Maloff v City Commn. on Human Rights, 46 N.Y.2d 908, 910; 2 Larson, Employment Discrimination § 35.02 [2d ed 1994]; see also, e.g., Johnson v Palma, 931 F.2d 203, 207 [2d Cir]; DeCintio v Westchester County Med. Ctr., 821 F.2d 111, 115 [2d Cir], cert denied 484 US 965). The mere absence of evidence that Mittleman's nonrenewal was based upon either of the two aforementioned reasons, standing alone, is insufficient to support a finding of retaliatory intent.
*129 The record is devoid of evidence to support a retaliatory motive for the nonrenewal. There was no evidence before the Commission, for example, that Mittleman's filing of the sex discrimination complaint was followed closely by discriminatory treatment (see, Johnson v Palma, supra, at 207). Indeed, she was offered adjunct contracts and retained to teach at Pace for some two and one-half years after she filed her sex discrimination complaint. Nor was there evidence that Pace engaged in a pattern of discriminatory treatment of fellow employees who filed similar complaints (see, DeCintio v Westchester County Med. Ctr., supra, at 115).
Further, we conclude that the June 1989 letter cannot reasonably be construed as direct evidence of retaliatory animus on the part of Pace (see, id.). As previously noted, that letter expressly grounded nonrenewal on the failure to reach agreement on Pace's adjunct appointment offers "since January 1988" (emphasis supplied). This indisputedly includes the standard adjunct contract tendered Mittleman for the spring 1988 semester, which was not contingent on withdrawal of her sex discrimination claim. Thus, it would be unreasonable to construe the June 1989 letter as direct evidence that the nonrenewal was in retaliation for either Mittleman's filing or failure to withdraw the discrimination claim. Rather, its only fair construction is that her adjunct status would not be renewed because of her protracted tactical decisions not to execute a series of adjunct contracts, in favor of her relying completely upon achieving full tenure in the pending discrimination proceeding.
Finally, even if the Commission could have found a prima facie case of retaliation here, Pace Provost Pastore testified regarding a legitimate, independent and nondiscriminatory reason for Mittleman's nonrenewal  essentially that the University had concluded from her prior conduct that the likelihood she would execute an adjunct contract short of full tenure was nonexistent and that she could not be permitted to teach another year without a signed contract. This testimony was not discredited by the Commission nor shown by Mittleman to be pretextual based upon any other evidence in the record (see, Matter of Miller Brewing Co. v State Div. of Human Rights, 66 N.Y.2d 937, 939; 2 Larson, Employment Discrimination §§ 35.01, 35.05 [2d ed 1994]; cf., Matter of Pace Coll. v Commission on Human Rights, 38 N.Y.2d 28, 40).
Accordingly, the order of the Appellate Division should be *130 reversed, with costs, and the respondent Commission's decision and order, insofar as it determined that appellants unlawfully retaliated against respondent Mittleman, annulled.
Order reversed, etc.